IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. ___

JESSAH RUTLEDGE,

    Plaintiff,

v.

FOCUS ON THE FAMILY,

    Defendant.

## COMPLAINT AND JURY DEMAND

    Plaintiff, Jessah Rutledge, by and through undersigned counsel, Stinar & Zendejas, PLLC, brings this action against Defendant, Focus on the Family, as follows:

### I. INTRODUCTION

    1.    This case regards a pretextual termination and refusal to rehire Plaintiff to the same position following a medical leave of absence.

### II. JURISDICTION

    2.    This action is brought pursuant this Court's federal question jurisdiction, 28 U.S.C. § 1331, to bring claims against Defendant under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (hereafter "ADA"), and the ADA Amendments Act of 2008, Pub.L. No. 110–325 § 2(b)(1), 122 Stat. 3553–3554 (2008) (hereafter "ADAAA").

    3.    Plaintiff also invokes this Court's supplemental jurisdiction to bring claims against Defendant under the Colorado Anti-Discrimination Act C.R.S. § 24-34-402 *et seq.*

(hereafter "CADA"), which prohibits discrimination, retaliation, and harassment on the basis of disability or perceived disability by employers with one or more employees.

4. Jurisdiction is proper in the U.S. district court for the District of Colorado pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(2). The district court has original jurisdiction by virtue of the parties being citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. The district court has original jurisdiction by virtue of the claims arising under the ADA and ADAAA claims. Further, the district court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

### III. VENUE

5. Venue is proper in the district of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the state of Colorado.

### IV. PARTIES

6. Plaintiff Jessah Rutledge ("Plaintiff") is an individual residing in El Paso County, Colorado, who at all relevant times was disabled, perceived to be disabled, and availed herself of protections under the ADA and ADAAA. At all relevant times Plaintiff suffered serious medical conditions and impairments, including but not limited to miscarriage (and complications therefrom including surgery) and severe anxiety (including depression and panic attacks) that required/included treatment with medical professionals and prescription medications that limited or affected major life activities, including working, concentrating, and driving (herein "Serious Medical Conditions").

7. Defendant Focus on the Family (herein "FoF" or "Defendant") is a California non-profit corporation, with its principle office and headquarters in El Paso County, Colorado, where Plaintiff worked.

8. Upon information and belief, and at all relevant times, Defendant employed more than 50 employees during 20 or more workweeks in the relevant calendar years, including 2019-2020.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On September 10, 2020, Plaintiff received a "Dismissal and Notice of Rights" for EEOC Charge No. 541-2019-02441 against Defendant (*see* **Exhibit A**), resulting from Plaintiff's Charge of Discrimination which pleaded discrimination and retaliation on the basis of disability and/or medical condition (actual or perceived), engaging in protected activity, and denial of reasonable accommodation. This Dismissal and Notice of Rights entitles Plaintiff to initiate this action within 90 days of receipt.

10. Plaintiff has satisfied all administrative and judicial prerequisites necessary for this action.

## VI. GENERAL ALLEGATIONS

A. <u>PLAINTIFF BEGINS HER EMPLOYMENT</u>.

11. Beginning around March 11, 2019 and continuing through June 11, 2019, Plaintiff worked for Defendant in Colorado Springs, Colorado performing her duties as a full-time Coordinator, Family Advancement.

12. At all times during her employment with Defendant, Plaintiff satisfactorily completed her job duties.

13. While working for Defendant, Plaintiff earned $18.95 per hour, with overtime opportunities, plus benefits including approximately 120 hours/yr of vacation leave, 10 paid holidays, personal development classes/resources, onsite fitness, health insurance, dental insurance, vision insurance, Short Term Disability insurance, Long Term Disability insurance, life insurance, Alfac supplemental coverage, prescription drug coverage, pre-paid legal services, and store discount, which is approximately valued at 35% of Plaintiff's pay, bringing Plaintiff's approximate hourly pay to $25.58/hr and weekly pay (40 hrs/wk) to $1,023.30.

14. At all times, Plaintiff's position did not require Plaintiff to be in the office to perform her primary duties (especially administrative tasks relating to coordinating events, preparing expense statements, coordinating travel, data entry, and drafting correspondence) and/or Defendant had sufficient staff/resources to allow it to provide the below mentioned requested accommodations relating to Plaintiff's Serious Medical Conditions, including but not limited to working from home, working a reduced number of work hours, working off hours, or other forms of accommodation that would have allowed Plaintiff to remain employed.

15. Shortly after beginning her position with Defendant, Plaintiff learned that she was pregnant.

16. Plaintiff was the mother of several children and despite medically-difficult pregnancies in the past and the unplanned nature of this pregnancy, Plaintiff and her family were extremely excited for the addition of another child to the family.

17. Plaintiff experienced somewhat typical but heightened symptoms related to the first trimester of pregnancy including dizziness, nausea, decreased appetite, and fatigue.

18. Following what was first thought of as a miscarriage very early in her pregnancy, Plaintiff began suffering from more severe anxiety and worry given the ominous beginning to her pregnancy and was treated by her physician for the same.

19. Because of the heightened nature of her symptoms, Plaintiff requested very light accommodation, which were supported by her physician, Dr. Jennifer Ziegler, at work and was allowed the ability to rest on the couch in the women's bathroom as needed when her anxiety, dizziness and nausea flared.

20. Unfortunately, in May 2019, Plaintiff suffered a miscarriage stemming from what was diagnosed as a molar pregnancy.

21. As a result of the miscarriage (which was incomplete), Plaintiff was required to undergo surgery, performed by Dr. Christian York of North Springs OB GYN, forcing her to miss a week of work.

22. Plaintiff presented this medical-related leave request to Defendant, which at that time accommodated her need for time off.

23. The difficult pregnancy, culminating with the miscarriage and resulting surgery, devastated Plaintiff and amplified her anxiety, to which she began therapy and working to find a proper medicine management program to treat her anxiety and panic disorder.

24. Prior to returning to work from her surgery, Plaintiff requested additional time off from Defendant relating to the medicinal regimen she and her doctor were working on to treat Plaintiff's disorders.  Defendant responded by requesting Plaintiff complete a form for Plaintiff's physician to complete and return so that Defendant could "see if they could accommodate [Plaintiff's] disability."

25. Shortly thereafter, Plaintiff's medical provider completed a revised form dated May 21, 2020, indicating that Plaintiff could work 8-10 hours per week, over the next three months, due to impairments to major life activities such as concentrating, driving, and sleeping. The note further stated that Plaintiff had a hard time breathing due to panic attacks, and that Plaintiff was working on issues with her therapist and her medications. The form of accommodation requested by Plaintiff's provider was for Plaintiff to work 8-10 hours per week over the next three months.

26. On May 22, 2019, Defendant's human resources manager emailed Plaintiff stating that "Jenn Scheck [Vice President of Human Resources] and David [Cheney] would like to meet with you tomorrow morning at 11:30am to touch base on your medical restrictions."

27. On May 23, 2019, Defendant (Ms. Scheck) began the meeting by unconditionally refusing to accommodate Plaintiff's requested medical restriction, informing Plaintiff that such restriction would just not work for Defendant. Ms. Schreck strangely informed Plaintiff that if she "was better" before Defendant found a replacement for Plaintiff, that Plaintiff could return to her job, but so long as Plaintiff had any restriction, she could not return to work. Ms. Scheck told Plaintiff that Defendant was placing Plaintiff on a three (3) month short-term disability leave and that during this leave Defendant would be replacing Plaintiff. Ms. Schreck told Plaintiff to not contact Defendant during her leave and that Defendant would contact Plaintiff as appropriate. Ms. Schreck also told Plaintiff that if Plaintiff found a job with Defendant in August that she qualified for, and that if Plaintiff had no restrictions and was cleared to work, and if Plaintiff "interviewed well" that Plaintiff could look forward to working for Defendant again. Ms.

Schreck also told Plaintiff that she should go home to "process the news and tell your husband." Defendant ended the meeting as quickly as it began the meeting.

28. During this meeting, Defendant did not ask or inquire about Plaintiff's restrictions in any way shape or form or engage in any interactive process with Plaintiff. Defendant did not want to entertain or explore any accommodation that would allow Plaintiff to gainfully work in any capacity, for any amount of time. Defendant did not interact with Plaintiff to discuss alternative work conditions or terms that would either conform to her present restrictions or would allow Plaintiff to revisit such proposal with her physician to see if some other form of accommodation would be agreeable (e.g. working from home on a laptop given that her primary duties could be performed virtually anywhere with an internet connection, and that she was willing to be flexible and if needed revisit her work hours with her physician in order to preserve her job).

29. On June 11, 2019, Ms. Schreck contacted Plaintiff to inform her that Plaintiff's replacement had been hired, that this replacement was to begin working on June 17, 2019, and that Plaintiff was no longer needed by Defendant. Ms. Schreck told Plaintiff that Plaintiff could remain on short term disability through its term and that Defendant would reach out to Plaintiff in August, at the conclusion of the short term disability leave with instructions as to what would happen next. Ms. Schreck failed to explain or clarify really anything to Plaintiff, except to make clear that Plaintiff did not have a job to return to because some else had been permanently hired by Defendant to replace her. At no time during this conversation did Defendant engage in any interactive process with Plaintiff to identify any position or form of her position that would allow Plaintiff to work in any capacity, or request any update to Plaintiff's restrictions.

7

30. In August 2019, when Plaintiff's short-term leave ended no one from Defendant reached out to her or otherwise inquired about Plaintiff's return to work in any capacity in any position.

31. By this time in August 2019, Plaintiff had been fully released to return to work by her physician and, heeding Defendant's statement that her position was given to someone else and she had no job to return to, Plaintiff had already begun looking for other work, which she had no luck in securing.

32. Having heard nothing, Plaintiff began looking for positions with Defendant. For instance, around September 10, 2019, Plaintiff applied for Defendant's Administrative Assistant 4 position, which was a position that Plaintiff was qualified for given it was of lower qualification than the Coordinator position Plaintiff previously held.

33. The next day, without any additional communication or feedback, Defendant emailed Plaintiff indicating that it had decided to pursue other candidates.

34. Having not found any other positions, around October 22, 2019, Plaintiff applied for Defendant's Administrative Assistant 3 position that had apparently been opened on October 2, 2019, which was a position that Plaintiff was qualified for given it was of lower qualification than the Coordinator position Plaintiff previously held.

35. Defendant never responded to Plaintiff concerning Plaintiff's application for the Administrative Assistant 3 position.

36. Upon information and believe, for the next year, and at least through September 2020, Defendant could not in fact fill or keep filled the Administrative Assistant 3 position.

37. Upon information and belief, at all relevant times, Defendant maintained a staff of volunteers who fill in for employees that are on leave.

38. Upon information and belief, at all relevant times, Defendant maintained a sufficient number of employees, performing similar or redundant duties, that would have allowed any in-person work Plaintiff performed as a Coordinator (e.g. receiving and dispatching post mail) to be performed as a form of accommodation.

39. Upon information and belief, at all relevant times, Defendant could accommodate employees in the Coordinator position, without any or minimal undue burden, to work from home, work remotely, or otherwise be accommodated for their own personal or medical needs, or even for the business's needs.

40. Defendant's position that Plaintiff could not work for it until she was without any medical restriction or requested accommodation is against the law.

41. Upon information and belief, at all relevant times, Defendant discriminated and/or retaliated against Plaintiff on account of her disability and/or perceived disability and/or request for accommodation by terminating Plaintiff's employment and/or refusing to hire Plaintiff despite that she was at all times qualified for her and other positions she held or sought.

42. As a consequence of Defendant's above-mentioned actions, Plaintiff has suffered emotional damages.

43. As a consequence of Defendant's above-mentioned actions, Plaintiff has suffered economic damages as follows: back wages and compensation, loss of economic opportunities and professional growth, loss of insurance and benefits either not available on the open market or otherwise prohibitively expensive, and other forms of economic harm.

44. As a consequence of Defendant's above-mentioned actions, statutory interest has accrued on the sums of money due to Plaintiff, including back wages and compensation.

45. As a consequence of Defendant's above-mentioned actions, Plaintiff has been forced to retain counsel and pursue litigation, incurring costs and attorney's fees.

## VII. CLAIMS OF RELIEF

**FIRST CLAIM OF RELIEF**
**Violation of ADA/ADAAA**
**Disability Discrimination, Retaliation, Failure to Accommodate**
**Against Defendant**

46. Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

47. At all relevant times, Defendant qualified as Plaintiff's employer and Plaintiff qualified as Defendant's employee under the ADA and the ADAAA.

48. At all relevant times, upon information and belief Defendant employed over 15 employees.

49. At all relevant times, Plaintiff satisfactorily performed her job duties for Defendant, which could be performed virtually and not in the office, or at varying times throughout the workday or workweek.

50. At all relevant times, Plaintiff was a qualified individual with a disability and Serious Medical Conditions as she had the requisite skill, experience, education and other job-related requirements of the position and she could perform the essential functions of her position with or without accommodation depending on the particular workday or workweek.

51. At all relevant times, Defendant regarded and/or perceived Plaintiff as disabled, notable as Defendant placed Plaintiff on short term disability leave, as well as suffering from Serious Medical Conditions, which constituted an actual or perceived disability or medical condition that substantially limited her in one or more of her major life activities, including, but not limited to thinking, concentrating, driving, and working.

52. At all relevant times, Defendant could have but chose not to accommodate Plaintiff's Serious Medical Conditions and request for accommodation by *inter alia* allowing Plaintiff to work from home, having a flexible schedule, utilizing leave, or taking other measures to allow Plaintiff to work with reasonable accommodations.

53. Defendant violated the ADA and the ADAAA when it took actions that were adverse to Plaintiff's employment including, *inter alia,* refusing to engage in any interactive process to identify any accommodation, penalizing Plaintiff for even proposing her medically related restrictions, unlawfully terminating Plaintiff's employment within weeks of forcing Plaintiff on short term disability leave, failing to accommodate Plaintiff's actual and/or perceived disability, and failing to hire or rehire Plaintiff to any position offered by Defendant to which Plaintiff was qualified and applied for.

54. As alleged above, Plaintiff's actual/perceived disability and Serious Medical Conditions, and/or her request for medical accommodations, were the motivating factor for these adverse employment actions taken by Defendant.

55. As alleged above, non-disabled employees were not subjected to these same adverse employment actions taken by Defendant against Plaintiff.

56. At all relevant times, the accommodations Plaintiff requested were reasonable and posed no undue hardship to Defendant.

57. At all times mentioned herein Defendant's agents, managers, and supervisors knew or should have known of this conduct by witnessing, condoning, or effectuating the discriminating and retaliatory events described herein.

58. As alleged above, Defendant caused, allowed, and/or condoned Plaintiff to be discriminated against and retaliated against because of Plaintiff's actual/perceived disability and Serious Medical Conditions, and/or her request for medical accommodations.

59. At all relevant times and as alleged above, Defendant acted maliciously and willfully as it knew its conduct was prohibited by the law and/or Defendant showed a reckless disregard for whether its actions were prohibited under the law or not.

60. As a direct and proximate result of Defendant's unlawful termination and/or failure to accommodate and/or refusal to hire/rehire Plaintiff, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proven at trial.

61. Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

## SECOND CLAIM OF RELIEF
### Violation of CADA
### Disability Discrimination, Retaliation, Failure to Accommodate
### §§ 24-34-301 to 24-34-804, C.R.S.
### Against Defendant

62. Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

63. At all relevant times, Defendant qualified as Plaintiff's employers and Plaintiff qualified as Defendant's employee under the CADA.

64. At all relevant times, upon information and belief Defendant employed over 1 employee.

65. At all relevant times, Plaintiff satisfactorily performed her job duties for Defendant, which could be performed virtually and not in the office, or at varying times throughout the workday or workweek.

66. At all relevant times, Plaintiff was a qualified individual with a disability and Serious Medical Conditions as she had the requisite skill, experience, education and other job-related requirements of the position and she could perform the essential functions of her position with or without accommodation depending on the particular workday or workweek.

67. At all relevant times, Defendant regarded and/or perceived Plaintiff as disabled, notable as Defendant placed Plaintiff on short term disability leave, as well as suffering from Serious Medical Conditions, which constituted an actual or perceived disability or medical condition that substantially limited her in one or more of her major life activities, including, but not limited to thinking, concentrating, driving, and working.

68. At all relevant times, Defendant could have but chose not to accommodate Plaintiff's Serious Medical Conditions and request for accommodation by *inter alia* allowing Plaintiff to work from home, having a flexible schedule, utilizing leave, or taking other measures to allow Plaintiff to work with reasonable accommodations.

69. Defendant violated the CADA when it took actions that were adverse to Plaintiff's employment including, *inter alia,* refusing to engage in any interactive process to

13

identify any accommodation, penalizing Plaintiff for even proposing her medically related restrictions, unlawfully terminating Plaintiff's employment within weeks of forcing Plaintiff on short term disability leave, failing to accommodate Plaintiff's actual and/or perceived disability, failing to hire or rehire Plaintiff to any position offered by Defendant to which Plaintiff was qualified and applied for.

70. As alleged above, Plaintiff's actual/perceived disability and Serious Medical Conditions, and/or her request for medical accommodations, were the motivating factor for these adverse employment actions taken by Defendant.

71. As alleged above, non-disabled employees were not subjected to these same adverse employment actions taken by Defendant against Plaintiff.

72. At all relevant times, the accommodations Plaintiff requested were reasonable and posed no undue hardship to Defendant.

73. At all times mentioned herein Defendant's agents, managers, and supervisors knew or should have known of this conduct by witnessing, condoning, or effectuating the discriminating and retaliatory events described herein.

74. As alleged above, Defendant caused, allowed, and/or condoned Plaintiff to be discriminated against and retaliated against because of Plaintiff's actual/perceived disability and Serious Medical Conditions, and/or her request for medical accommodations.

75. At all relevant times and as alleged above, Defendant acted maliciously and willfully as it knew its conduct was prohibited by the law and/or Defendant showed a reckless disregard for whether its actions were prohibited under the law or not.

76. As a direct and proximate result of Defendant's unlawful termination and/or failure to accommodate and/or refusal to hire/rehire Plaintiff, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proven at trial.

77. Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

WHEREFORE, Plaintiff prays for the following relief:

A. Orders and judgments as requested;
B. Nominal damages;
C. Economic and compensatory damages, in an amount to be shown at trial;
D. Consequential damages;
E. Liquidated damages;
F. Punitive or exemplary damages, in an amount to be shown at trial;
G. Statutory penalties for failure to pay wages;
H. Statutory penalties for a willful failure to pay wages;
I. Costs and attorney's fees;
J. Pre- and post-judgment interest at the highest rate allowed by law;
K. All legal or equitable relief; and
L. All other legal or equitable relief to which Plaintiff is entitled and/or the court and/or jury deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted this 17th day of November 2020.

*s/Christopher G. Wilhelmi*
Christopher G. Wilhelmi
Attorney for Plaintiff
Stinar & Zendejas, PLLC
121 East Vermijo Ave, Suite 200
Colorado Springs, CO 80903
E-mail: chris@coloradolawgroup.com
Phone: 719-635-4200
Fax: 719-635-2493